NO.   94-601

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

IN THE MATTER OF THE ESTATE OF
WINIFRED MILLS FIREBAUGH, Deceased,

JOHN E. FIREBAUGH,

  Petitioner and Respondent,

 v.

KENNETH M. FIREBAUGH,

  Respondent and Appellant.

FILED

JUL 06 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
      In and for the County of Missoula,
      The Honorable Edward McLean, Judge presiding.


COUNSEL OF RECORD:

   For Appellant:

   Terry Wallace, Attorney at Law, Missoula, Montana

   For Respondent:

   Martin S. King; Worden, Thane & Haines, Missoula,
   Montana


        Submitted on Briefs: June 1, 1995

            Decided: July 6, 1995

Filed:

_____
     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Kenneth Firebaugh, one of the decedent's two sons, appeals from the decision of the District Court holding that debts Kenneth owed to his deceased mother were to be offset against his share of her estate, despite the fact that the debts had been previously discharged in bankruptcy. John Firebaugh cross appeals. We affirm in part, reverse in part and remand.

Winifred Mills Firebaugh died on November 25, 1991 in Missoula, Montana. She left a will dated April 24, 1984. Winifred Firebaugh was survived by two sons; John Firebaugh of Missoula and Kenneth Firebaugh of Kalispell. The two sons are named as the co-personal representatives and are the sole heirs and beneficiaries under her will. The value of Winifred's estate at the time of her death was $151,427.71. Of that sum, approximately $62,111.54 was equally distributed to John and Kenneth from an Edward D. Jones account and approximately $9,292.19 was used to satisfy estate expenses.

In May of 1989, Kenneth sold his 1/4 undivided interest in some Kansas real estate to his mother for $42,000. His mother paid Kenneth in cash. After receipt of the cash, Kenneth purchased a condominium in California and filed a homestead exemption on that property. The District Court concluded that the sales price of $42,000 was clearly excessive; that the 1/4 interest only had a value of $30,475.

At the time of her death, Winifred's son John was indebted to Winifred in the sum of $26,000. Her son Kenneth was indebted to

her in the sum of $68,695. However, in August of 1989, Kenneth filed a petition in bankruptcy under Chapter 7 in the Eastern District of California. In that proceeding, Kenneth listed his mother as an unsecured creditor in the sum of $55,395. Kenneth received a discharge in bankruptcy on January 12, 1990. Winifred, who was Kenneth's single largest creditor, received no distributions from that bankruptcy proceeding.

Sometime in 1991, Winifred met with Edward D. Jones account executive Scott Wilson to discuss the distribution of her Edward D. Jones account upon her death. At the time of that discussion, she prepared a note which stated: "On my death, John to have top $57,000 - rest divided equally." The District Court found that this note evidenced her desire that the pre-bankruptcy debt of Kenneth be considered for the purpose of calculating her sons' respective shares of the estate.

Winifred's last will and testament provides, in part, as follows:

> If either of my two sons are indebted to me at the time of my death, I forgive such debt or debts and direct my personal representatives not to collect such indebtedness, but to cancel and return any evidences thereof to my son or sons having his indebtedness canceled. If, at the time of my death, either of my sons are indebted to me, but not in equal amounts, or if one of my sons is indebted to me and the other is not, I direct my personal representatives to pay to my son who is not indebted the same amount of money as the amount of indebtedness of my other son that was forgiven; or if one son is indebted to me to a lesser extent than the other, an amount of money sufficient to equalize the indebtedness of my other son forgiven under this provision, taking into consideration any indebtedness of each son forgiven. It is my intention that each of my sons be treated equally.

The District Court concluded that, based on the provisions of the will, since Kenneth was indebted in a greater amount than John, the difference between the two debts would be paid to John. With John indebted in the amount of $26,000 and Kenneth indebted in the amount of $68,695, the difference was $42,695. Accordingly, from the $112,023 (the value of the estate less the Kansas property valued at $30,475) the first $42,695 was to be distributed to John leaving a balance of $69,328.52 to be divided equally.

John contends that under § 72-2-501, MCA (1991), his mother's intent to treat her sons equally is controlling and thus the District Court's decision to offset the debt of Kenneth should be affirmed. Appellant Kenneth contends that, under the provisions of § 72-3-912, MCA, the court should have treated his debt as having been discharged. Section 72-3-912, MCA, provides as follows:

> The amount of a noncontingent indebtedness of a successor to the estate if due, or its present value if not due, shall be offset against the successor's interest; but the successor has the benefit of any defense which would be available to him in a direct proceeding for recovery of the debt.

Standard of Review:

In determining whether the provisions of the will or § 72-3-912, MCA, control distribution of the estate, the District Court was making a legal conclusion. "[W]e review conclusions of law to determine whether the district court's interpretation of the law is correct." In re Marriage of Barnard (1994), 254 Mont. 103, 106, 870 P.2d 91, 93.

4

Issue:

Whether, in light of Winifred Firebaugh's testamentary intent to treat her sons equally, her son Kenneth's share under the will may be offset by his indebtedness to his mother even though a portion of said indebtedness has been discharged in bankruptcy?

Discussion:

Kenneth and John each rely upon statutory provisions in effect at the time of their mother's death in 1991. Kenneth invokes § 72-3-912, MCA, and contends that his discharge in bankruptcy would constitute a valid defense to any attempt by the estate to recover the debt. John relies on § 72-2-501, MCA (1991), (which has since been repealed) for the proposition that the testatrix's intent is controlling.

Kenneth is correct in claiming that his discharge in bankruptcy qualifies as a valid defense under § 72-3-912, MCA. However, as the District Court observed, to ignore Kenneth's pre-bankruptcy debt of $55,395 would thwart the clear intent of Winifred as reflected in her will.

At the time Winifred made her will, the law provided that her intent, as expressed in her will, would be the controlling consideration. That statutory provision, although repealed in 1993, remained in effect at the time of her death in 1991. We must thus assume that Winifred died believing that her intent would be the controlling consideration. Her intent, as expressed in the four corners of her will, is clearly to treat her two sons equally.

5

If Kenneth's debt of $55,395 is not offset against his share, Winifred's intent is subverted. Faced with a conflict between § 72-3-912, MCA, and the terms of the will, we determine that Winifred's clear intent controls. That is, "[i]n construing a will the paramount rule is that the testator's intent gathered from the words of the will governs the interpretation of the will." State v. Keller (1977), 173 Mont. 523, 526, 568 P.2d 166, 168. Similarly, in Matter of Estate of Ellison (1990), 243 Mont. 258, 260, 792 P.2d 5, 6, we held: "[T]hat intention of a testator, as expressed in his Will, controls the legal effect of his disposition."

Given the clear language of the second paragraph of her will, there is no question but that Winifred intended the sons' shares of her estate be adjusted to reflect monies that the sons had received from her as loans during her lifetime. We hold that as of the time of Winifred's death in November 1991, testamentary intent takes precedence over the provisions of § 72-3-912, MCA.

## Cross Appeal:

### Issue:

Whether the District Court erred in refusing to order disposition of an interest in real property owned by the estate but located in the State of Kansas?

With regard to Winifred's interest in real estate located in Kansas, the District Court concluded that Kenneth should not be able to share equally in property that he transferred to his mother

at an inflated price. However, the District Court declined to order disposition of the Kansas property, instead, deferring to the jurisdiction of the Kansas court in an ancillary probate. John Firebaugh cross appeals contending that under Montana law the District Court should be directed to order distribution of the Kansas property in conformity with its Findings of Fact and Conclusions of Law and Order dated August, 29, 1994.

We affirm the District Court's refusal to order distribution of the Kansas property. However, in doing so, we note that the District Court was in error in concluding that Kenneth should not be allowed to share equally in the Kansas property since he transferred that property to his mother at an inflated price. Kenneth sold his share of the property to his mother in May of 1989, some two years six months before her death in November of 1991. There is nothing in the record indicating that Winifred objected to the sales price at the time of the purchase or during the subsequent two and one-half years of her life. Nor did she seek to challenge the transaction in Kenneth's bankruptcy proceeding. Accordingly, there is no basis for the District Court to determine that Kenneth's share of the estate is (or should be) subject to an offset as a result of that transaction.

Affirmed.

_W. William Dughart_
Justice

7

We concur.

_____
Chief Justice

_____

_____
Justices

8

Justice James C. Nelson specially concurs and dissents as follows:

I respectfully dissent from our decision on the issue on appeal and concur with our decision on the issue on cross-appeal. Section 72-11-304, MCA, (1991), provides that extrinsic evidence is inadmissible in the construction of a will unless there is some alleged mistake or imperfection in the writing, unless the validity of the will is in dispute, or unless it is necessary to explain the circumstances under which the will was made or to which it relates, to explain an extrinsic ambiguity or to establish illegality or fraud. None of those exceptions are raised here. Winifred's will is clear and unambiguous, and there is no need to delve into what her supposed intention was in making her will.

Winifred's will provides at paragraph Second:

> **If either of my two sons are indebted to me at the time of my death,** I forgive such debt or debts and direct my personal representatives not to collect such indebtedness, but to cancel and return any evidences thereof to my son or sons having his indebtedness cancelled. If, **at the time of my death, either of my sons are indebted to** me, but not in equal amounts, or if **one of my sons is indebted to me and the other is not,** I direct my personal representatives to pay to my son who is not indebted to me the same amount of money as the amount of indebtedness of my other son that was forgiven; **or if one son is indebted to me to a lesser extent** than the other, an amount of money sufficient to equalize the indebtedness of my other son forgiven under this provision, taking into consideration any indebtedness of each son forgiven. It is my intention that each of my sons be treated equally. [Emphasis added.]

As the language quoted from her will clearly states, Winifred provided that a son's debts were to be offset against his share of her estate, if and to the extent that son was indebted to her at the **time** of her death. In point of fact, Kenneth *was not indebted*

9

*to Winifred at the time of her death.* His debt to her had been discharged in bankruptcy--a proceeding in which she was listed as the principle creditor for the debts offset here, but in which she did not file a creditor's claim.

Section 72-11-307, MCA (1991), requires that all parts of a will are to be construed in relation to each other so as to, if possible, form one consistent whole. By improperly and unnecessarily attempting to divine Winifred's intention in order to achieve what appears to be a more equitable result in the distribution of her estate, we have simply written out of her will that language which conditions her direction that her sons be treated equally on the provision that one or *the other of her sons* be indebted to her at the time of her death.

I cannot agree in that approach. It is not the prerogative of this or of any other court to rewrite the clear and unambiguous provisions of a decedent's will simply because of a judicial perception of inequity in the distribution of the testatrix' estate. Accordingly, on the issue on appeal, I, respectfully dissent.

_____
Justice

Justice Karla M. Gray concurs in the foregoing dissent and special concurrence.

_____
Justice

10

July 6, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Kenneth M. Firebaugh
432 E. Idaho #218
Kalispell, MT 59901

Terry Wallace
Attorney At Law
P.O. Box 4763
Missoula, MT 59806-4763

Martin S. King, Esq.
Worden, Thane & Haines
P.O. Box 4747
Missoula, MT 59807

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *A. Gallagher*
Deputy